## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:21-cr-00491 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| PAUL SPIVAK, | ) | |
| | ) | |
| OLGA SMIRNOVA, | ) | |
| | ) | |
| CHARLES SCOTT, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHRISTOPHER BONGIORNO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OMNIBUS OPINION AND ORDER

The second superseding indictment brings multiple charges against Defendants Paul Spivak, Olga Smirnova, Charles Scott, and Christopher Bongiorno. In short, it charges each Defendant with conspiracy to commit securities fraud. All Defendants other than Olga Smirnova are also charged with securities fraud and wire fraud. And Mr. Spivak is charged with obstruction of justice. Specifically, the second superseding indictment charges each Defendant as follows:

Defendant Paul Spivak:

| Count(s) | Charge |
|---|---|
| 1 & 2 | Conspiracy to Commit Securities Fraud, in violation of 18 U.S.C. § 371 |

2 of 47. PageID #: 3212

| 5–12 & 18–22 | Securities Fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 24010b-5 |
|---|---|
| 23–43 & 44–47 | Wire Fraud, in violation of 18 U.S.C. § 1343 |
| 48 | Conspiracy to Obstruct Justice, in violation of 18 U.S.C. § 1512(k) |
| 49 | False Declarations Before the Court, in violation of 18 U.S.C. § 1623(a) |
| 50 | Obstruction of a Federal Investigation, in violation of 18 U.S.C. § 1519 |

Defendant Olga Smirnova:

| Count(s) | Charge |
|---|---|
| 1 & 2 | Conspiracy to Commit Securities Fraud, in violation of 18 U.S.C. § 371 |

Defendant Charles Scott:

| Count(s) | Charge |
|---|---|
| 1 & 2 | Conspiracy to Commit Securities Fraud, in violation of 18 U.S.C. § 371 |
| 13 & 20 | Securities Fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 24010b-5 |
| 45 & 47 | Wire Fraud, in violation of 18 U.S.C. § 1343 |

Defendant Christopher Bongiorno:

| Count(s) | Charge |
|---|---|
| 1 | Conspiracy to Commit Securities Fraud, in violation of 18 U.S.C. § 371 |

| 8–10 | Securities Fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 24010b-5 |
| 29–33 | Wire Fraud, in violation of 18 U.S.C. § 1343 |

(*See generally* ECF No. 206.)

Each Defendant brings various pretrial motions. Broadly, those motions fall into three categories, with varying nomenclature: (1) motions to dismiss the indictment; (2) motions to sever; and (3) a motion to suppress. After providing generally applicable background, the Court addresses each Defendant's motions under those broad headings. Also, certain Defendants move to adopt some motions that others make. In the interest of judicial economy, the Court **GRANTS** those motions (ECF No. 286; ECF No. 311; ECF No. 316) and addresses all pending motions in this omnibus ruling.

## BACKGROUND

In 2012, Paul Spivak founded U.S. Lighting Group, Inc., which initially manufactured light bulbs. Through a reverse merger with Luxurious Travel Group (whose ticker symbol is LXRT) in 2016, the company became publicly traded. Subsequent acquisitions added businesses focused on campers, speed boats, and fiberglass manufacturing, including building fiberglass houses.

In June 2019, the Securities and Exchange Commission served a subpoena on USLG, addressed to Mr. Spivak, in connection with an investigation into the purchase of USLG securities. (ECF No. 284-1.) On August 5, 2019, the SEC advised Mr. Spivak that the staff recommended not proceeding with an enforcement action

against USLG or Mr. Spivak.  (ECF No. 284-2, PageID #2318.)  However, the SEC did bring enforcement actions against others charged in this case:  (1) Richard Mallion; (2) Christopher Bongiorno; (3) Jason Arthur; and (4) Larry Matyas.

## ANALYSIS

In accordance with the case management schedule, the parties filed various pretrial motions.  Specifically, Mr. Scott moves to sever his case from Mr. Spivak's.  (ECF No. 275.)  Ms. Smirnova moves to bifurcate trial on Counts 1 and 2 from Counts 48, 49, and 50.  (ECF No. 278.)  Mr. Spivak and Ms. Smirnova move to dismiss Counts 1 and 2 and the related securities and wire fraud charges.  (ECF No. 283 & ECF No. 291; ECF No. 284.)  Mr. Spivak moves to dismiss Counts 48 and 50.  (ECF No. 285.)  Mr. Bongiorno moves to suppress the admission of certain evidence (ECF No. 287), for relief from the joinder of Counts 1 and the related securities and wire fraud counts from Count 2 and its related counts (ECF No. 288), to dismiss the charges against him due to pre-indictment delay (ECF No. 289), and to return certain property (ECF No. 315).  On April 25, 2024, the Court heard oral arguments on all pending motions.

## I.    Motions to Dismiss

Defendants Paul Spivak and Olga Smirnova move to dismiss Count 1 and Count 2—the conspiracy charges (ECF No. 283 & ECF No. 291; ECF No. 284)—and the related securities and wire fraud counts.  Additionally, Mr. Spivak moves to dismiss Counts 48 and 50.  (ECF No. 285.)  Defendant Charles Scott joins their motion to dismiss Count 1 and the related securities and wire fraud counts.  (ECF No. 316.)  Separately, Defendant Christopher Bongiorno moves to dismiss the second

superseding indictment based on pre-indictment delay (ECF No. 289) and joins the motion to dismiss Count 1 that Mr. Spivak and Ms. Smirnova filed (ECF No. 286).

## I.A.    Rule 12 Motions

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. Const. amend. VI.  The Supreme Court has recognized two constitutional requirements for an indictment.  First, the indictment must "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Howard*, 947 F.3d 936, 942 (6th Cir. 2020).  Second, the indictment must "enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Resendiz-Ponce*, 549 U.S. at 108.

Consistent with these constitutional mandates, Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires an indictment to include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Reciting statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (quoting *Hamling*, 418 U.S. at 117–18).  This notice does not require that the indictment charge every fact the prosecution intends to prove at trial. "Further, '[t]he indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary

implications. An indictment is to be construed liberally in favor of its sufficiency.'" *United States v. Lee*, 919 F.3d 340, 349 (6th Cir. 2019) (quoting *McAuliffe*, 490 F.3d at 531).

### I.A.1. Count 1 (and the Related Fraud Charges)

Pursuant to Rule 12(b)(3)(B), Defendants move to dismiss the conspiracy charge in Count 1 and the related securities and wire fraud charges. They argue that this count fails to charge conspiracy and that the indictment alleges only that Defendants conspired to commit acts that are not in fact crimes. (ECF No. 284, PageID #2280–87.)

A conspiracy requires "an agreement to commit an unlawful act." *United States v. Frost*, 914 F.2d 756, 762 (6th Cir. 1990). At trial, the Court will instruct the jury that, for any Defendant to be guilty of a conspiracy, the jury must unanimously find that (1) "two or more persons conspired, or agreed, to commit the offense of" securities or wire fraud, as the case may be; (2) "the defendant knowingly and voluntarily joined the conspiracy;" and (3) "a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy." *See* Sixth Circuit Committee on Pattern Criminal Jury Instructions, *Pattern Criminal Jury Instructions* § 3.01A(2) (Mar. 1, 2023); *see also, e.g.*, *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004). As the United States argues (ECF No. 303, PageID #2823; ECF No. 305, PageID #2877), the conspiracy (the agreement) itself is the crime. *See Frohwerk v. United States*, 249 U.S. 204, 209 (1919). The second superseding indictment charges each of the elements of

6

conspiracy and includes the relevant time periods. (*See* ECF No. 206, ¶¶ 37–41, PageID #1419–36.)

Because the facts charged suffice to find probable cause that Defendants agreed to act in concert, the question turns on whether the second superseding indictment charges conduct, which if proved, violated the federal securities laws (as the United States maintains) or whether it does nothing more than describe legal conduct (as Defendants argue). Accordingly, the Court examines the second superseding indictment to determine whether Count 1 and the related fraud counts contain "such a statement of the facts and circumstances as will inform the accused of the specific offense." *McAuliffe*, 490 F.3d at 531 (quoting *Hamling*, 418 U.S. at 117–18).

### I.A.1.a. Securities Fraud and Wire Fraud

Defendants contend that the second superseding indictment fails to put them on notice of what theory of securities fraud the prosecution will pursue at trial. (ECF No. 284, PageID #2278–79.) The second superseding indictment charges violations of 15 U.S.C. 78j(b), which outlaws using or employing, in connection with the purchase or sale of any security, "any manipulative or deceptive device or contrivance" that the SEC may prescribe to protect investors. Rule 10b-5 implements this statute:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
>     (a)    To employ any device, scheme, or artifice to defraud,

7

(b)     To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  The second superseding indictment charges violations of each subsection of the Rule.  (ECF No. 206, ¶ 48, PageID #1443.)

Specifically, the second superseding indictment charges that (1) Mr. Spivak "used co-conspirators and nominees to acquire outstanding shares"; (2) Mr. Scott and Mr. Spivak "had a profit-sharing arrangement" and "sought to manipulate [CareClix Holdings] stock to profit"; (3) Ms. Smirnova "assisted in the payment of fraudulent kickbacks to unregistered brokers for soliciting investors"; and (4) Mr. Bongiorno was an unregistered broker, operated call rooms, and recruited others to sell stock.  (*Id.*, ¶¶ 10–13, PageID #1412–13.)  It goes on to allege, for example, that Mr. Spivak "and others artificially inflated the share price of USLG, to make the restricted stock investments more attractive to sell to the investing public" (*id.*, ¶ 23, PageID #1415); identifies specific dates and transactions, including the approximate number of shares and stock proceeds involved in each, that allegedly violate federal securities laws (*id.*, ¶ 48, PageID #1443–44); and describes various transactions, conversations, and amounts investors allegedly lost (*id.*, ¶ 41, PageID #1420–36).  These alleged facts, among others, sufficiently allege violations of the federal securities laws.  Of course, the jury might or might not find that the prosecution proves its case beyond

8

a reasonable doubt. But that determination belongs to the jury, not the Court at this stage of the proceedings.

Further, Defendants argue that the second superseding indictment mixes and matches from various legal theories to create an impression of wrongdoing but fails to charge any single coherent legal theory. For this argument, Defendants rely on the common theories for proving securities fraud: (1) pump-and-dump schemes; (2) manipulation of the market for USLG stock; and (3) investor misrepresentations. To illustrate Defendants' argument, the second superseding indictment charges some actions that might suggest a pump-and-dump scheme. Defendants argue that it fails to allege publication of any false or misleading statements or that Mr. Spivak or Ms. Smirnova sold USLG stock at artificially inflated prices. Similarly, they argue that the second superseding indictment fails to allege manipulative trading or false statements to investors.

But the second superseding indictment alleges that Mr. Spivak sent text messages to others asking why their trading volume was dropping off and charges that certain trades were made specifically to raise the stock price. (*See* ECF No. 206, ¶¶ 41y & 41ss, PageID #1425 & 1428–29.) Without more, it is not unlawful to bolster the price of a company's stock. Taking the allegations in their entirety and their necessary implications as true, however, the United States charges more here—actions to manipulate USLG's stock price. If proved, such manipulation violates federal securities laws. Whether the prosecution can prove those charges remains to be seen.

9

Though the second superseding indictment does not detail specific misrepresentations made to particular investors, the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 do not apply in this criminal action. Still, the second superseding indictment specifically alleges that certain members of the conspiracy made misrepresentations to investors. For example, the United States alleges that Defendants used fraudulent agreements and invoices while also making "material misrepresentations to investors including statements regarding the company, the structure of the restricted stock investment, the timing of the restricted hold period, and the use of the proceeds of the investment." (ECF No. 206, ¶¶ 25, 26, & 29, PageID #1415.)

In the end, in the most technical sense, Defendants correctly point out that the second superseding indictment does not explicitly specify which theory of securities fraud it alleges; for example, it does not charge a violation of a particular subsection of a statute or rule. But it generally alleges fraud regarding USLG securities. That notice suffices under the Constitution and Rule 7.

### I.A.1.b. Legal Conduct

Defendants argue that the alleged non-disclosure of commissions paid to brokers or co-conspirators charged in the second superseding indictment does not violate federal securities laws.

Failure to disclose commissions, kickbacks, or other payments might violate federal securities laws if their non-disclosure "omit[s] to state a material fact necessary in order to make the statements made . . . not misleading" when

10

considering "the light of the circumstances under which [the omission] was made." 17 C.F.R. § 240.10b-5(b).  While omissions alone do not suffice, half-truths do. *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263–65 (2024). Therefore, whether any broker, seller, or co-conspirator misled investors depends— even in the absence of a fiduciary duty—on the facts presented at trial, specifically whether any investor acted on assertions made misleading by a failure to disclose compensation, whether called a kickback, commission, bonus, or something else. *See United States v. Laurienti*, 611 F.3d 530, 537–43 (9th Cir. 2010) (rejecting argument that bonus commissions were immaterial as a matter of law where "every former client who testified said that he or she would not have bought the . . . stocks had he or she known about the bonus commissions").

Defendants rely on a recent decision from another federal court dismissing a securities fraud indictment to argue for dismissal of Count 1.  (ECF No. 308, PageID #2948–49; ECF No. 309, PageID #2970–71.)  In *United States v. Constantinescu*, No. 4:22-cr-612, 2024 WL 1221579, at *2–6, 2024 U.S. Dist. LEXIS 49916, at *13–19 (S.D. Tex. Mar. 20, 2024), the United States charged that certain investors in a company engaged in a scheme to defraud by using their social media presence to encourage others to invest.  The court dismissed the indictment for several reasons, including that allegedly defrauded investors bought stock "at market prices, and in return, received the benefit of the bargain in the form of securities."  *Id.* at *18–19. In fact, many of the victims actually made money.  *Id.* at *15.

The allegations that led the court to dismiss in *Constantinescu* are distinguishable from those charged in the second superseding indictment. First, taken as true, the charges here involve more than incidental losses. The second superseding indictment claims that Defendants and co-conspirators artificially inflated the stock price and "solicited potential investors." (ECF No. 206, ¶ 13, PageID #1412–16.) Soliciting specific investors as part of an alleged scheme, who then allegedly lost money, involves more than incidental losses. Second, the indictment outlines specific losses that resulted from the alleged actions of Defendants. (*Id.*, ¶¶ 47–54, PageID #1443–47.)

For all these reasons, the second superseding indictment does not charge purely lawful conduct. Determining whether any Defendant crossed the line and violated the federal securities laws remains to be proved at trial.

\*  \*  \*

Reading the second superseding indictment as a whole, and taking the factual allegations and their necessary implications as true, the grand jury charges that Mr. Spivak, Ms. Smirnova, Mr. Scott, and Mr. Bongiorno, as well as others, conspired to manipulate the stock price of USLG in violation of federal securities laws and committed wire fraud. Each of the fraud counts related to Count 1 provides the approximate date of sale to investors or date of deposit of investors' funds, approximate number of shares involved in each transaction, and the proceeds of each stock sale. (ECF No. 206, ¶ 48, PageID #1443–44.) Count 1 and the related substantive counts within the second superseding indictment (1) contain the elements of the offense charged and fairly informs each Defendant of the charges

against which he or she must defend; and (2) enable each Defendant in the future to plead an acquittal or conviction in bar of future prosecutions for the same offenses. Therefore, the Court **DENIES** Defendants' motions to dismiss Count 1 and the related counts.

### I.A.2. Count 2 (and the Related Fraud Charges)

Pursuant to Rule 12(b)(3)(A)(v), Defendants move to dismiss Count 2 and the related securities and wire fraud charges.  Under this Rule, a defendant may raise "a defect in instituting the proceedings," including "an error in the grand jury proceeding or preliminary hearing."  Fed. R. Crim. P. 12(b)(3)(A)(v).  Defendants maintain that the indictment misrepresents what actually occurred and argue entrapment.  (ECF No. 283, PageID #2218; ECF No. 291, PageID #2360.)

Also, Defendants seek dismissal of Count 2 under Rule 12(b)(3)(B), which allows for challenges to various "defect[s] in the indictment," including "failure to state an offense" and multiplicity ("charging the same offense in more than one count"), among others. Fed. R. Crim. P. 12(b)(3)(B).  In this regard, Defendants claim, as they did for Count 1, that Count 2 and the related counts also fail to state a claim because it alleges "legal activity, not securities fraud."  (ECF No. 283, PageID #2219; ECF No. 291, PageID #2361.)

### I.A.2.a. Misrepresentation

Based on their read of the second superseding indictment, Defendants maintain that the United States misrepresented certain facts to the grand jury or, alternatively, misled the grand jury through the overall picture of the facts presented. In particular, Defendants take issue with the portrayal of the facts in specified

13

paragraphs in the second superseding indictment.  (ECF No. 283, PageID #2225–27; ECF No. 291, PageID #2367–69.)

*First*, Defendants challenge the first overt act alleged in furtherance of the conspiracy charged in Count 2—that Mr. Spivak solicited others to purchase USLG stock:

> On or about February 15, 2021, SPIVAK and SMIRNOVA had a consensually recorded meeting with an undercover federal agent ("UC-1") and a confidential human source ("CHS"), wherein SPIVAK solicited UC-1 and CHS to purchase stock from SPIVAK and USLG to sell for SPIVAK's and USLG's benefit.

(ECF No. 206, ¶ 46(a), PageID #1439; *see also* ECF No. 283, PageID #2225; ECF No. 291, PageID 2367.)  Contrary to the version of events charged, Defendants argue that the United States solicited Mr. Spivak and Ms. Smirnova.  Defendants assert that the undercover agents repeatedly asked to purchase free-trading stock from Mr. Spivak and that he told them that he could only sell restricted stock.  (ECF No. 283, PageID #2225; ECF No. 291, PageID #2367; ECF No. 291-4, PageID #2424.)  However, the second superseding indictment does not specify that Mr. Spivak solicited the sale of free-trading stock.  Instead, it charges that he solicited the agents "to purchase stock from SPIVAK and USLG to sell for SPIVAK's and USLG's benefit." (ECF No. 206, ¶ 46(a), PageID #1439.)  Whether Mr. Spivak initiated the conversation presents a distinct inquiry from whether he solicited the purchase of stock.  Ultimately, the fact that the second superseding indictment does not include additional facts regarding the conversation does not necessarily make the statement inaccurate.

*Second*, Defendants contest the accuracy of the allegation that Mr. Spivak directed others to sell stock to undercover agents:

> On or about March 10, 2021, SPIVAK had a consensually recorded telephone call with CHS, wherein SPIVAK agreed to have SCOTT and Church sell shares to an undercover federal agent posing as an investor for $25,000 each, as a "test."  During this conversation, SPIVAK stated that he would need to call SCOTT and Church to inform them [a confidential human source] was "on the team" and not an "outsider" prior to negotiating the share purchases.  SPIVAK stated after the test transactions they would negotiate the sale of the remaining six million shares held by the [*sic*] SCOTT and Church.

(ECF No. 206, ¶ 46(c), PageID #1439–40; *see also* ECF No. 283, PageID #2225; ECF No. 291, PageID 2367.)  Defendants claim that this statement is inaccurate because it was the agent's idea to set up a test run, not Mr. Spivak's.  But the second superseding indictment does not charge that the test transaction was Mr. Spivak's idea.  It merely alleges that Mr. Spivak "agreed" to the test run.  Also, Defendants point out that the agent, not Mr. Spivak, "stated" the plan because Mr. "Spivak barely spoke."  (ECF No. 283, PageID #2225; ECF No. 291, PageID #2367.)  As lawyers know from the hearsay rules, however, silence does not mean that a person makes no statement.  Here, for example, Mr. Spivak said that he "thought [he]'d call first so they know that" the undercover agent was "on the team and not some outsider."  (ECF No. 291-14, PageID #2656.)  In this respect, the second superseding indictment does not allege that Mr. Spivak did all or a majority of the talking, just that "he would need to call SCOTT and Church to inform them [a confidential human source] was 'on the team' and not an 'outsider' prior to negotiating the share purchases."  (ECF No. 206, ¶ 46(c), PageID #1439–40.)  After that, sale of the remaining shares that Mr. Scott and Church held would be negotiated.  Generally, the transcript of the

recording at issue supports a version of the events charged, even if Defendants take issue with the particular characterization or wording of the events.

*Third*, Defendants point to the second superseding indictment's claim that Mr. "SPIVAK and [others] caused an interstate wire transfer of $25,000 from a government-controlled back account to [that other person's account] . . . for the purchase of 100,000 free-trading shares of USLG." (ECF No. 206, ¶¶ 46(f) & (g), PageID #1440; *see also* ECF No. 283, PageID #2225–26; ECF No. 291, PageID #2367–68.) Again, Defendants argue that the agent devised the plan, not Mr. Spivak, such that Mr. Spivak "did not 'cause' any purchase." (ECF No. 283, PageID #2226; ECF No. 291, PageID #2368.)  Defendants challenge the facts or their characterization.  A jury might agree with Defendants and their version of events. But the grand jury could fairly determine that the totality of the evidence provides probable cause for this charge.  In any event, the elements of conspiracy and securities fraud do not include causation—certainly not in any sense like a civil action under Rule 10b-5.

*Fourth*, Defendants call the charge that Mr. Spivak solicited others to purchase stock "for SPIVAK's and USLG's benefit" incorrect.  (ECF No. 206, ¶ 46(a), PageID #1439; ECF No. 283, PageID #2226; ECF No. 291, PageID #2368.)  Also, Defendants challenge as incorrect the allegation that Mr. Spivak and others agreed "to divide up the proceeds from the sale of USLG shares in accordance with their respective interests or commission in shares sold."  (ECF No. 206, ¶ 45(g), PageID #1439; ECF No. 283, PageID #2226; ECF No. 291, PageID #2368.)  They argue that Mr. Spivak

repeatedly told the agents that he did not "need" the money or that the proceeds from sales of USLG stock go to the company, not him.  (ECF No. 291-16, PageID #2667; ECF No. 291-17, PageID #2711; ECF No. 283, PageID #2226; ECF No. 291, PageID #2368.)  The grand jury was free to decide that Mr. Spivak's statements simply lack credibility or to view the company as his alter ego.

*Finally*, because Count 2 varies "so drastically from what is reflected" in the recordings on which it is based (ECF No. 283, PageID #2226; ECF No. 291, PageID #2368), Defendants surmise that the prosecution necessarily presented an incomplete and misleading picture of the events giving rise to the second superseding indictment. But it has long been established that the United States is not required to present every fact regarding a case to a grand jury, including exculpatory facts.  "To the contrary, requiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body."  *United States v. Williams*, 504 U.S. 36, 51 (1992).

At bottom, Defendants dispute the prosecution's version of the facts.  Such disputes belong to the jury.  At this stage of the proceedings, the grand jury could determine based on the totality of the evidence before it that there is probable cause for the charges it returned.

### I.A.2.b. Entrapment

Defendants claim that the government entrapped them. (ECF No. 283, PageID #2227–32; ECF No. 291, PageID #2369–74.)  According to Defendants, from November 2020 to February 2021, after the conspiracy at issue in Count 1 allegedly

ended in 2019 (*see* ECF No. 206, ¶ 38, PageID #1419), the government approached Mr. Spivak and sought to involve him in illegal conduct (ECF No. 283, PageID #2220, ECF No. 291, PageID #2362).  On at least 15 occasions, Defendants point out that Mr. Spivak told agents that USLG could "only legally sell restricted stock."  (ECF No. 283, PageID #2220–21, ECF No. 291, PageID #2362–63; *see also* ECF No. 291-3, PageID #2407–09; ECF No. 291-4, PageID #2423; ECF No 291-5, PageID #2520; ECF No. 291-6, PageID #2562.)  Further, on December 15, 2020, before the conspiracy charged in Count 2 allegedly began (*see* ECF No. 206, ¶ 43, PageID #1437), a confidential human source invested $25,000 in USLG—a transaction that the United States does not allege is fraudulent (ECF No. 291-7, PageID #2578).

Then, Defendants maintain that the government introduced Mr. Spivak and Ms. Smirnova to undercover agents posing as investors with significant funds to invest in USLG.  (ECF No. 283, PageID #2221; ECF No. 291, PageID #2363; *see also* ECF No. 291-8, PageID #2582; ECF No. 291-9, PageID #2586; ECF No. 291-10, PageID #2594–96.)  In February 2021, the confidential human source brought Mr. Spivak and Ms. Smirnova to Florida to meet other potential investors.  (ECF No. 283, PageID #2221; ECF No. 291, PageID #2363.)  He offered to fly them to Florida on a private plane, but Mr. Spivak and Ms. Smirnova drove instead, pulling a camper.  (ECF No. 283, PageID #2221–22; ECF No. 291, PageID #2363–64.)  Then, the second superseding indictment charges that the conspiracy in Count 2 began with a meeting on a yacht with purported investors.  (ECF No. 283, PageID #2222; ECF No. 291, PageID #2364; *see also* ECF No. 291-13.)

18

At that meeting with agents posing as investors, Mr. Spivak advised that USLG's restricted stock was "all gone" and proposed to lend the company stock so the agents could acquire stock. (ECF No. 291-11, PageID #2600.) The agents expressed concern about not being able to sell restricted stock immediately, and Mr. Spivak advised them to buy and hold the stock, at least for a time. (Ex. 291-12, PageID #2632.) As the agents pushed Mr. Spivak to let them market USLG stock, Mr. Spivak initially said that he did not need the money and only wanted to obtain a listing on the NASDAQ. (*Id.*, PageID #2633–34.) Only then did Mr. Spivak relent and agree to do business with the undercover agents. (ECF No. 283, PageID #2222; ECF No. 291, PageID #2364.)

Additionally, in March and April 2021, Mr. Spivak resisted efforts to do anything illegal, instead making introductions to those who held unrestricted stock. (ECF No. 291-14, PageID #2655–56; ECF No. 291-16, PageID #2667.) In one recorded conversation in this timeframe, Mr. Spivak said that, until he met these potential investors, he had no plan to promote USLG stock. (ECF No. 291-15, PageID #2660–61.) In another, Mr. Spivak said that he can only do what the law allows him to do without raising red flags and that he did not want to do anything to jeopardize the company. (ECF No. 291-16, PageID #2667.)

### I.A.2.b.i. Subjective Entrapment

Entrapment is a defense to a criminal prosecution. *Mathews v. United States*, 485 U.S. 58, 62 (1988) (citing *Sorrells v. United States*, 287 U.S. 435 (1932)). As a defense, entrapment embodies two separate theories, both originating in *Sorrells*: subjective and objective entrapment. *Sosa v. Jones*, 389 F.3d 644, 647 (6th Cir. 2004).

19

Under the objective formulation, entrapment examines the conduct of the government and provides a defense where the government induces or instigates the commission of a crime by one not predisposed to commit it. *See id.* (citing *United States v. Russell*, 411 U.S. 423, 445 (1973) (Stewart, J., dissenting)). In contrast, subjective entrapment focuses on the predisposition of the defendant to commit the offense. *Mathews*, 485 U.S. at 63; *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002). Federal law employs the subjective version of the defense. *Sosa*, 389 F.3d at 647.

To prevail on an entrapment defense using the subjective test, the defendant must show: (1) government inducement of the offense; and (2) the defendant's lack of predisposition to commit the offense. *United States v. McLernon*, 746 F.2d 1098, 1109 (6th Cir. 1984). Improper inducement involves the "repeated and persistent solicitation" of a person to commit a crime. *Sorrells*, 287 U.S. at 441. "An 'inducement' consists of an 'opportunity' *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *United States v. Dixon*, 396 F. App'x 183, 186 (6th Cir. 2010) (quoting *United States v. Gendron*, 18 F.3d 955, 961 (1st Cir. 1994)).

Predisposition inquires whether the defendant was inclined to commit the crime with which he is charged. *United States v. Kussmaul*, 987 F.2d 345, 349 (6th Cir. 1993). Under the law of this Circuit, the following factors are relevant to determining whether a defendant was predisposed to commit the charged crimes:

> (1) the character or reputation of the defendant; (2) whether the suggestion of the criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant evidenced reluctance to commit the offense but was overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government.

*United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990) (citation omitted(; *see also United States v. White*, 815 F. App'x 27, 29–30 (6th Cir. 2020).

Because federal courts employ the subjective entrapment test, "[t]he question of entrapment is generally one for the jury, rather than for the court." *Mathews*, 485 U.S. at 63 (citing *Sherman v. United States*, 356 U.S. 369, 377 (1958)). "If the evidence bearing on the question of entrapment is in dispute, the question must be submitted to the jury." *United States v. Jones*, 575 F.2d 81, 84 (6th Cir. 1978). Put another way, if the facts are not disputed, a court may decide entrapment as a matter of law. *See, e.g.*, *Sherman*, 356 U.S. at 373; *Jones*, 575 F.2d at 84.

### I.A.2.b.ii. Predisposition

In this case, the evidence regarding the predisposition of Defendants is not undisputed for at least three reasons. First, the recorded conversations on which Defendants base their arguments depend on a fact finder's evaluations of the discussions, which are subject to competing interpretations depending on their tone, context, and the other complexities of human interactions. In other words, these conversations are not subject to only one indisputable interpretation.

Second, taking the transcripts of the conversations on which Defendants rely at face value, some at least suggest that Mr. Spivak may have said one thing and intended another. For example, some recordings suggest that Mr. Spivak sought to

21

manipulate USLG's price later—just not when the undercover agents wanted him to do so.  (*See* ECF No. 291-4, PageID #2423; ECF No. 291-5, PageID #2520; ECF No. 291-7, PageID #2578–79.)  Another might be read to suggest that Mr. Spivak only agreed to the plan put to him by undercover agents posing as investors.  (*See* ECF No. 291-14, PageID #2655–56.)  Determining what Mr. Spivak meant in these discussions is the province of the jury.

Third, the United States points to additional recorded conversations that it claims supports its version of events.  For example, Mr. Spivak introduced agents to two shareholders the United States contends that he controlled.  (*See* ECF No. 291-6, PageID #2563–64; ECF No. 291-15, PageID #2660.)  And in one conversation, Mr. Spivak says that he had plans to "do what you're going to do," meaning that he had planned to engage in the sorts of transactions at issue all along.  (ECF No. 291-15, PageID #2660–61.)

For these reasons, the issue of entrapment in this case belongs to the jury.  Accordingly, Defendants may raise the issue at trial, and "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents."  *Jacobson v. United States*, 503 U.S. 540, 549 (1992) (citation omitted).

### I.A.2.c. Failure to State a Claim

As they did with Count 1, Defendants move to dismiss Count 2 for failure to state a claim.  (ECF No. 283, PageID #2232; ECF No. 291, PageID #2374.)  Regarding the conspiracy charge in Count 2, the second superseding indictment goes beyond merely reciting the elements of the offense.  It identifies specific facts from which a

finder of fact could determine that Defendants engaged in a conspiracy to defraud others.  Again, the question ultimately turns on whether the second superseding indictment charges conduct, which if proved violates the federal securities laws (as the United States maintains) or whether it does nothing more than describe legal conduct (as Defendants argue).

Defendants argue that they are charged with doing nothing more than promoting USLG stock.  As Defendants acknowledge (ECF No. 283, PageID #2234 n.6; ECF No. 291, PageID #2376 n.6), however, the second superseding indictment charges that Defendants other than Mr. Spivak and Ms. Smirnova made material misrepresentations to investors.  (ECF No. 206, ¶ 29, PageID #1415.)  Defendants complain that the second superseding indictment does not specifically identify those alleged misrepresentations.  Again, unlike the civil pleading standards, the Constitution and Rule 7 do not demand so much.  In any event, the second superseding indictment advises Defendants of the general nature of the statements at issue.  And if the statements were made in furtherance of the conspiracy, then co-conspirators may answer for them as violations of federal law.

As with Count 1, the second superseding indictment contains a sufficient statement of facts that advises Defendants of the nature and circumstances of the securities and wire fraud charges they face.  *See McAuliffe*, 490 F.3d at 531 531 (quoting *Hamling*, 418 U.S. at 117–18).  The facts alleged sufficiently make out violations of the federal securities laws.  Of course, the jury might or might not find

that the prosecution proves its case beyond a reasonable doubt.  But that decision ultimately rests with the jury.

*      *      *

Reading the second superseding indictment as a whole, and taking the factual allegations and their necessary implications as true, the grand jury charges that Mr. Spivak, Ms. Smirnova, and Mr. Scott, as well as others, conspired to manipulate the stock price of USLG in violation of federal securities laws and committed wire fraud.  Regarding the fraud counts related to Count 2, each provides the approximate date of sale to investors or date of deposit of investors' funds, approximate number of shares involved in each transaction, and the proceeds of each stock sale.  (ECF No. 206, ¶ 48, PageID #1444.)   Count 2 and the related counts (1) contain the elements of the offense charged and fairly informs each Defendant of the charges against which he or she must defend; and (2) enable each Defendant in the future to plead an acquittal or conviction in bar of future prosecutions for the same offenses. Further, the statements made in the indictment are not fatally inaccurate, and any entrapment determination is for the jury.   Accordingly, the Court **DENIES** Defendants' motions to dismiss Count 2 and its related counts.

### I.A.3. Obstruction Counts (Count 48 and Count 50)

Mr. Spivak moves to dismiss Counts 48 and 50—two of the three obstruction counts with which he is charged.  (ECF No. 285.)  Technically, Count 49 charges false declarations before the Court; Mr. Spivak does not move to dismiss that charge. Mr. Spivak argues that Count 48 violates his Sixth Amendment right to defend himself by presenting witnesses on his behalf and that Count 50 "prejudices [him] by

24

charging obstruction of justice, despite the fact that there was no pending federal investigation to obstruct."  (*Id.*, PageID #2319 & 2330.)

### I.A.3.a. Factual Background

Count 48 charges Mr. Spivak with conspiracy to obstruct justice.  (ECF No. 206, PageID #1447.)  This count charges that, in September 2020 while he was detained following the original indictment, Mr. Spivak conspired with others to (1) intimidate and threaten another person to prevent his testimony; (2) intimidate and threaten another person to prevent or hinder his communication to law enforcement of a possible federal offense; (3) obstruct an official proceeding; and (4) harass another person to prevent or dissuade him from testifying, in violation of 18 U.S.C. §§ 1512(a)–(d) and (k).  (ECF No. 206, ¶ 60, PageID #1448–49.)  As Mr. Spivak points out (ECF No. 285, PageID #2324), Count 48 does not charge him with actually "threatening, intimidating, harassing, or attempting to corrupt any witness."  Instead, the United States charges him with conspiracy to do so.  (ECF No. 206, PageID #1447–49).

Factually, Count 48 arises from Mr. Spivak's alleged actions while he was detained pending a hearing before the Magistrate Judge to determine whether he should be released.  (*Id.*, ¶ 57, PageID #1448.)  According to the second superseding indictment, Mr. Spivak and the prosecutor reached an agreement on June 11, 2021 regarding the terms of pretrial release.  (*Id.*, ¶ 58.)  Ten days later, on June 21, 2021, the United States renewed its motion to detain Mr. Spivak pending trial because of an incident involving a bag of dead rodents found on the doorstep of a witness.  (ECF No. 12; ECF No. 206, ¶ 59, PageID #1448.)  Over the next week, through June 28,

2021, the second superseding indictment charges that Mr. Spivak and others conspired to intimidate witnesses, obtain false witnesses, conceal the obstruction, and obtain Mr. Spivak's release from jail.  (ECF No. 206, ¶¶ 60–61, PageID #1448–49.) Recorded phone calls while Mr. Spivak was detained supply at least some of the evidence supporting this charge.  (*Id.*, ¶¶ 68–84, PageID #1451–56.)  Mr. Spivak maintains that he merely attempted to obtain the testimony of a witness—not to obstruct justice, intimidate the witness, or influence his testimony.  (ECF No. 285, PageID # 2327–31.)  In short, the parties sharply dispute the interpretation of the events giving rise to the charge.

Count 50 charges obstruction of a federal investigation in violation of 18 U.S.C. § 1519.  (ECF No. 206, PageID #1459.)  During a recorded phone call on June 10, 2021, the United States charges that Mr. Spivak "knowingly caused the destruction, concealment, and covering up of tangible objects, specifically, three computers, with the intent to impede, obstruct, and influence the investigation and proper administration of" a matter within the jurisdiction of the Federal Bureau of Investigation.  (*Id.*, ¶ 95, PageID #1463.)  On June 10, 2021, while detained, Mr. Spivak asked an employee of USLG, during a recorded phone call, to remove three computers with information relating to Richard Mallion from his house.  (*Id.*, ¶ 94, PageID #1460–61.)  The next day, Pretrial Services inspected Mr. Spivak's home to determine whether it was a suitable alternative to pretrial detention.  (ECF No. 26, PageID #213–14.)  For this reason, Mr. Spivak maintains that there was no

investigation to obstruct on that date because the FBI did not have a warrant to search his house.  (ECF No. 285, PageID #2331–32.)

### I.A.3.b. The Parties' Arguments

In moving to dismiss Count 48, Mr. Spivak maintains that the United States "seeks to deprive [him] of [his Sixth Amendment] bedrock constitutional right and unduly prejudice him in front of a jury by criminalizing the basic act of defending himself."  (ECF No. 285, PageID #2323.)  In relevant part, the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  Accordingly, the Sixth Amendment secures a defendant's right to call witnesses and present a defense. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 (2009); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  Based on Mr. Spivak's arguments (*see* ECF No. 285, PageID #2325–31), he appears to raise an as-applied challenge to Count 48.

On the surface, this challenge appears to have little merit.  While the Sixth Amendment guarantees a defendant the right to present a defense, it does not excuse or justify his efforts (or those made on his behalf at his request) to threaten or intimidate witnesses or corruptly to influence their testimony, as the United States alleges occurred here.  After all, such actions interfere with the truth-seeking function of the courts and otherwise undermine the administration of justice.  On the other hand, the Supreme Court will shortly issue a ruling that might bear on interpretation and application of the statute under which Mr. Spivak is charged.  *See Fischer v. United States*, 144 S. Ct. 537 (2023) (granting a writ of certiorari to determine

27

whether Section 1512(c) applies to obstruction of congressional proceedings unrelated to investigations and evidence).

As for Count 50, an arrest does not necessarily bring an investigation to its end.  Even concealing or destroying evidence "with intent to obstruct a foreseeable investigation of a matter within the" FBI's jurisdiction satisfies the elements of Section 1519.  *See United States v. Kernell*, 667 F.3d 746, 753 (6th Cir. 2012) (quoting *United States v. Yielding*, 657 F.3d 688, 711 (8th Cir. 2011)).  In other words, "the plain language of the statute only requires the Government to prove that [the defendant] intended to obstruct the investigation of *any* matter that happens to be within the federal government's jurisdiction."  *United States v. Gray*, 692 F.3d 514, 519 (6th Cir. 2012).  And the plain language of Section 1519 "clearly states that the falsification could be done 'in relation to or contemplation of any' investigation or matter within United States jurisdiction."  *United States v. Lanham*, 617 F.3d 873, 887 (6th Cir. 2010).  Accordingly, the merits of Count 50 come down to whether the United States can prove the charge at trial, and Mr. Spivak's argument appears to have little merit at first glance.

### I.A..3.c. Waiver

But the Court need not wade into the merits of the challenges Mr. Spivak makes to Count 48 or Count 50.  Nor does the Court have to wait on the Supreme Court's ruling in *Fischer*, which might affect Count 48.  As Mr. Spivak points out (ECF No. 308, PageID #2959; ECF No. 309, PageID #2981), the United States did not respond to the motion to dismiss these counts.  Although the United States listed these counts in its brief opposing Defendants' various motions (ECF No. 303, PageID

28

#2821; ECF No. 305, PageID #2875), and addressed severance of these counts from others (ECF No. 303, PageID #2831; ECF No. 305, PageID #2885), it did not speak to the merits of Mr. Spivak's motion to dismiss Count 48 or Count 50.

At oral argument, the United States maintained that, by responding to the motions to dismiss Count 1 and Count 2, it addressed the conspiracy charged in Count 48 by implication. (ECF No. 319, PageID #3101–02.) Its briefing, however, limited the argument to "[t]he charging language of Counts One and Two in the Second Superseding Indictment[.]" (ECF No. 303; PageID #2822; ECF No. 305, PageID #2876.) It does not address Count 48 or its underlying facts. (*See* ECF No. 303, PageID #3822–24; ECF No. 305, PageID #2876–78.) Regarding Count 50, the United States at oral argument contended that there was an ongoing federal investigation that falls within the FBI's jurisdiction, but otherwise did not explain where its brief opposed Mr. Spivak's motion to dismiss Count 50. (ECF No. 319, PageID #3102–03.)

A court may take the absence of a response to a motion to dismiss as a waiver of the right to respond. *See Notredan, LLC v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (explaining that a plaintiff's failure to oppose a motion forfeits counter argments and provides an independent basis for granting the motion as unopposed); *Humphrey v. United States Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (recognizing that failure to oppose a motion waives counter arguments). Although these cases, and those on which Mr. Spivak relies, arise in civil litigation, the Court has no found controlling authority that treats criminal cases as a whole or the United States as a party differently.

To the contrary, "[i]n our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."  *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).  "To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights."  *Id.* at 243–44 (citation omitted).  Here, able counsel for the United States chose not to oppose Mr. Spivak's motion to dismiss Count 48 and Count 50.  The record provides no indication that it did so unintentionally.  For example, the United States did not seek leave at any time to file an opposition or to correct the record.

That leaves the technical question whether the United States waived or forfeited its opposition.  "Waiver is different than forfeiture."  *United States v. Olando*, 507 U.S. 725, 733 (1993); *Freytag v. Commissioner*, 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring in part) (noting the Supreme Court's cases "often used [waiver and forfeiture] interchangeably," but that "[t]he two are really not the same.").  Under the law of this Circuit, a failure to oppose a motion *waives* counter arguments.  *Humphrey*, 279 F. App'x at 331 (collecting cases).  Accordingly, the Court reads the United States' failure to oppose Mr. Spivak's motion to dismiss Count 48 and Count 50 as a decision not to proceed with those charges.  Therefore, the Court enforces the waiver and **GRANTS** Mr. Spivak's motion to dismiss these counts.

### I.A.4. Venue (Count 44 and Count 45)

Under the Constitution, "[t]rial of all Crimes . . . shall be held in the State where the . . . Crimes shall have been committed."  U.S. Const. art. III, § 2, cl.3. Further, the Sixth Amendment requires a trial in "the state and district wherein the crime shall have been committed."  U.S. Const. amend. VI.  Pursuant to Rule 12(b)(3)(A)(i), Defendants move to dismiss Count 44 and Count 45 for improper venue.  (ECF No. 283, PageID #2238; ECF No. 291, PageID #2380.)  These counts charge that Mr. Spivak and Mr. Scott committed wire fraud "in the Northern District of Ohio, Eastern Division, and elsewhere."  (ECF No. 206, ¶ 53, PageID #1446.) Because wire fraud is a continuing offense, *United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005), "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district *in which such offense was begun, continued, or completed*." 18 U.S.C. § 3237(a) (emphasis added).

In Count 44, the second superseding indictment charges Mr. Spivak in connection with a wire transfer to and from Bank of America.  (ECF No. 206, ¶ 54, PageID #1447.)  And Count 45 charges Mr. Spivak and Mr. Scott in connection with a wire transfer from PNC Bank to Navy Federal Credit Union.  (*Id.*)  Each of these transfers allegedly involved a government-controlled account.  (ECF No. 206, ¶ 52, PageID #1446 (incorporating by reference Paragraphs 46(f) and (g).)

Arguing that these wire transfers were not sent from or received by a financial institution in the Northern District of Ohio, Defendants contend that venue is improper for these charges.  (ECF No. 283, PageID #2239; ECF No. 291, PageID

#2381.)  In response, the United States argues that Mr. "Spivak caused the electronic communications and transfers to be initiated by government agents in the Northern District of Ohio."  (ECF No. 303, PageID #2829; ECF No. 305, PageID #2883.)

In their arguments, Defendants consider only the places of the banks involved in the wire transfers without regard for the locations of the individuals involved.  (*See* ECF No. 283, PageID #2239; ECF No. 291, PageID #2381.)  "Transmission of a message in furtherance of the scheme occurs in at least two locations: 'where the wire transmission at issue originated' and where it 'was received.'"  *United States v. Elbaz*, 52 F.4th 593, 604 (4th Cir. 2022) (quoting *United States v. Jefferson*, 674 F.3d 332, 369 (4th Cir. 2012)).  Depending on the facts presented at trial, however, this view might focus too narrowly for venue purposes.  Under Section 3237(a), venue is proper where the offense began, where it continued, or where it was completed.

At trial, "the government need only present proof sufficient to allow a rational trier of fact to conclude that venue was proper by a preponderance of the evidence." *Grenoble*, 413 F.3d at 573 (citing *United States v. Zidell*, 323 F.3d 412, 420–21 (6th Cir. 2003)).  Taking the facts in the second superseding indictment as true, the United States provides a factual basis on a motion to dismiss for a jury to find that venue on Count 44 and Count 45 is proper in the Northern District of Ohio.  Of course, the government might not prove venue for these counts, or a jury might find that venue is not proper.  But the allegations in the second superseding indictment suffice in the present procedural posture.  Accordingly, the Court **DENIES** Defendants' motion to dismiss Count 44 and Count 45.

### I.B.    Alternative Request for Grand Jury Instructions

In footnotes, Defendants make an alternative request for a copy of the legal instructions provided to the grand jury relating to Count 1 and to the evidence and instructions for Count 2.  (ECF No. 283, PageID #2227 n.4; ECF No. 284, PageID #2287 n.9; ECF No. 291, PageID #2369 n.4.)  They do so arguing that prosecutors likely failed to inform the grand jury that a broker has no obligation to disclose his compensation and that his failure to disclose his compensation does not violate the securities laws.  Further, they argue that the interests of preserving grand secrecy no longer apply because the investigation is complete, and Count 2 involves only agents, not members of the public.

For purposes of this motion, the Court assumes, contrary to ordinary federal practice, *see Alexander v. Eagle Mfg. Co.*, 714 F. App'x 504, 511 (6th Cir. 2017) (citation omitted) (noting that an alternative request almost as an aside in a brief does not present a proper motion), that Defendants properly raise their request for the legal instructions to the grand jury.

Rule 6(e) implements the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts."  *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958).  As the Supreme Court recognizes, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."  *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Safeguarding the confidentiality of grand jury proceedings serves several distinct interests, including, as relevant here, the investigatory purposes and functions of the grand jury.  *See id.* at 219 n.10.

33

Grand jury proceedings enjoy a presumption of regularity, *United States v. Azad,* 809 F.2d 291, 295 (6th Cir. 1986), but there are limits to secrecy. Rule 6(e) provides that a court may authorize disclosure of grand jury proceedings "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). Though unartfully drafted, this exception applies where the judicial proceeding for which disclosure is sought differs from the criminal trial that the grand jury's indictment authorizes. *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 615 (E.D. Va. 2004); *see also In re Antitrust Grand Jury*, 805 F.2d 155, 161 (6th Cir. 1986) (requiring a showing of particularized need "to avoid a possible injustice in another judicial proceeding") (citing *Douglas Oil*, 441 U.S. at 222). Otherwise, this exception would render the second exception (discussed below) superfluous. *Loc Tien Nguyen*, 314 F. Supp. 2d at 615–16; *see also* 1 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Criminal* § 108 (4th ed. 2021) ("[C]ourts have interpreted their authority to disclose material 'preliminarily to or in connection with a judicial proceeding' narrowly, to prevent the exception from swallowing the secrecy rule."). For this reason, the first exception has no application in this case.

As relevant here, a court may authorize disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). A party requesting a grand jury transcript must demonstrate a "particularized need" for the transcript for the secrecy of the proceedings to be lifted in a limited manner. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959). Particularized

need requires a showing that the defendant's need for the material outweighs the interest in continued secrecy and that the request is tailored only to the material needed. *See In re Antitrust Grand Jury*, 805 F.2d at 161 (articulating particularized-need standard under Rule 6(e)(3)(E)(i)) (citing *Douglas Oil*, 441 U.S. at 222). This standard applies even after grand jury proceedings have concluded. *Douglas Oil*, 441 U.S. at 222. A court has substantial discretion to determine whether grand jury materials should be released. *United States v. Short*, 671 F.2d 178, 183–84 (6th Cir. 1982) (citing *Schmidt v. United States*, 115 F.2d 394, 397 (6th Cir. 1940)). However, "the burden of establishing particularized need is necessarily heavy in order to protect the secrecy of the grand jury." *In re Grand Jury 89-4-72*, 932 F.2d 481, 489 (6th Cir. 1991).

In this case, Defendants make a request for limited disclosure only of the instructions to the grand jury relating to Count 1. (ECF No. 284, PageID #2287.) But they fail to make a showing of particularized need that meets the heavy burden required to overcome the presumption of regularity or the secrecy that protects grand jury proceedings. Even if the United States did not instruct the grand jury that commissions to brokers are not unlawful, the facts included in the second superseding indictment provide probable cause to support the charges, as already explained.

As for the evidence and instructions relating to Count 2, Defendants make no showing of particularized need. Their argument that "there is no need for continued secrecy" because the investigation has concluded, (ECF No. 283, PageID #2227 n.4; ECF No. 291, PageID #2369 n.4), applies in the run of cases and fails to make a

35

showing of particularized need. "Even after the conclusion of a particular grand jury's investigation, continued secrecy" serves the public interests of "protect[ing] the reputations of the innocent and safeguard[ing] witnesses from possible retaliation. *Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 567 n.11 (1983). Secrecy for "completed grand jury investigations may be necessary to encourage persons to testify fully and freely before future grand juries." *Id.* Defendants' other arguments for disclosure also fail to show a particularized need.

For these reasons, the Court **DENIES** the request for disclosure of the legal instructions to the grand jury.

### I.C.  Pre-Indictment Delay

Mr. Bongiorno seeks to dismiss the second superseding indictment pursuant to Rule 48(b) based on improper delay. (ECF No. 289.) It provides that the Court "may dismiss an indictment . . . if unnecessary delay occurs in . . . presenting a charge to a grand jury . . . or bringing a defendant to trial." Fed. R. Crim. P. 48(b)(1) & (3). The Fifth Amendment's Due Process Clause protects against oppressive pre-indictment delay. *See, e.g.*, *United States v. Lovasco*, 431 U.S. 783, 789–97 (1977); *United States v. Marion*, 404 U.S. 307, 324–25 (1971). To succeed on such a claim, a defendant must show "(1) prejudice to his right to a fair trial, and (2) that the delay was intentionally caused by the government in order to gain a tactical advantage." *United States v. Lively*, 852 F.3d 549, 566 (6th Cir. 2017) (quoting *United States v. Atchley*, 474 F.3d 840, 852 (6th Cir. 2007)). That prejudice must be substantial. *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009). And delay from investigative efforts alone does not suffice, even if resulting in some prejudice. *United*

*States v. Rogers*, 118 F.3d 466, 476 (6th Cir. 1997) (quoting *United States v. Atisha*, 804 F.2d 920, 928 (6th Cir. 1986)).  In this analysis, "[b]oth elements are difficult to establish, and a defendant who moves to have his indictment dismissed for pre-indictment delay faces an uphill battle." *Lively*, 852 F.3d at 566 (citation omitted). Indeed, "[t]he standard for pre-indictment delay is nearly insurmountable." *Rogers*, 118 F.3d at 477 n.10.

In this case, Mr. Spivak was indicted on June 7, 2021, and the United States superseded the indictment to add additional defendants—not Mr. Bongiorno—on September 16, 2021.  On June 29, 2023, the second superseding indictment named Mr. Bongiorno.  The second superseding indictment comes more than two years after the initial indictment, some nineteen months after the first superseding indictment, and more than six years after some of the events giving rise to the charges against Mr. Bongiornio.  (*See, e.g.*, ECF No. 206, PageID #1445.)  Given the passage of time, Mr. Bongiorno argues that "[d]elay inherently causes prejudice to a witnesses' ability to recall evidence [and] to a Defendant's ability to gather evidence."  (ECF No. 289, PageID #2348.)

Such problems attend any case, civil or criminal, involving events long past. Under the law of this Circuit, no presumption of prejudice arises in the due-process context due to lengthy preindictment delay.  *United States v. Schaffer*, 586 F.3d 414, 425 (6th Cir. 2009) (collecting Supreme Court cases that support this position). Accordingly, a general claim of what "inherently" results from delay does not rise to the level of showing substantial prejudice that violates the Fifth Amendment—a

defendant must instead provide "proof of *actual* prejudice makes a due process claim concrete and ripe for adjudication." *See Lovasco*, 431 U.S. at 789 (emphasis added); *see also United States v. Vaughn*, 444 F. App'x 875, 878–80 (6th Cir. 2011) (holding that the defendant was unable to show substantial prejudice in a case where he identified a specific eyewitness unable to be found due to the delay, destruction of specific evidence, and specific trial testimony showing a witness's inability to recall details.).

Leading up to his eventual indictment, Mr. Bongiorno engaged in discussions and negotiations with the United States and executed a series of three tolling agreements, waiving certain rights through June 30, 2023.  (ECF No. 305-2.)  The third such agreement, which Mr. Bongiorno executed on May 22, 2023 and his lawyer also signed, expressly waives the "right to raise any defense (including[,] but not limited to, any motion to dismiss) relating to pre-indictment delay."  (*Id.*, ¶ 3, PageID #2930.)  This waiver only relates to any argument of pre-indictment delay as of September 16, 2021, when tolling first began.  (*Id.*, ¶ 5, PageID #2931.)  These agreements defeat Mr. Bongiorno's arguments here.  He recognizes as much.  (ECF No. 314, ¶¶ 3 & 6, PageID #2999–3000.)

Further attempting to meet that standard, Mr. Bongiorno requests an evidentiary hearing to determine whether the United States acted in good faith or bad faith during the tolling period.  (ECF No. 289, PageID #2350; *see also* ECF No. 314, PageID #3000.)  He contends that the tolling period afforded investigators the opportunity to "call and harass Mr. Bongiorno's long-time clients, . . . conduct[]

38

searches into Mr. Bongiorno's current banking records," and otherwise threaten and harass Mr. Bongiorno and those close to him personally and professionally.  (ECF No. 289, PageID #2348–49.)  Even if true, these allegations show only that the United States conducted further investigative efforts during the period of tolling—failing to make out a due-process violation under the law of this Circuit.  *See Rogers*, 118 F.3d at 476.  In any event, whether the United States acted in good or bad faith does not establish prejudice.  The Court can conceive of no set of facts arising from the events underlying Mr. Bongirono's motion that, even if proved at a hearing, would accomplish the "nearly insurmountable" task of establishing a Fifth Amendment violation.  *See id*. at 477 n.10.  Therefore, the Court declines to hold a hearing on Mr. Bongiorno's request.

## II.  Motions Regarding Joinder and Severance

Defendants filed multiple requests to sever the parties or counts in various ways.  (ECF No. 275, 276, 278, 288.)  Specifically, Mr. Bongiorno, who is not charged in Count 2, moves to sever trial on Count 1 and the related counts claiming prejudice from joining all the charges in a single trial.  (ECF No. 288.)  Mr. Scott seeks to sever his trial from Mr. Spivak's, claiming prejudice from incriminating recorded statements that Mr. Spivak made about him to undercover agents.  (ECF No. 275.)  Ms. Smirnova seeks to sever Count 48, Count 49, and Count 50—the obstruction charges—because the second superseding indictment implicates her in the factual basis for those counts, even though she is not charged in them.  (ECF No. 278.)  Finally, although Mr. Spivak did not file any motions to sever, at oral argument he joined at least one of these motions, arguing prejudice from trying Count 1 and

Count 2 together, in light of his entrapment defense. (ECF No. 319, PageID #3133–35.)

Rule 8(b) permits joinder of "2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim P. 8(b). "All defendants need not be charged in each count." *Id.* Additionally, Rule 8 allows for joinder of two or more offenses where "the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). These Rules "promote economy and efficiency" and seek "to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968) (citation omitted).

Through their various motions, Defendants argue that, to prevent unfair prejudice, the Court should exercise its discretion to sever or bifurcate charges, Defendants, or both. Rule 14 gives the Court discretion to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "As a general rule, persons jointly indicted should be tried together because 'there is almost always common evidence against the joined defendants that allows for the economy of a single trial.'" *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002) (quoting *United States v. Phibbs*, 999 F.2d 1053, 1067 (6th Cir. 1993)). "Severance should be granted only when 'there is a serious risk that

a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Sherrill*, 972 F.3d 752, 763 (6th Cir. 2020) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

Therefore, to support a motion for relief from prejudicial joinder, Defendants must point to "specific 'substantial,' 'undue,' or 'compelling' prejudice" that results from "a 'spillover of evidence' from one case to another." *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014) (quoting *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002)). To determine whether joinder prejudices a party, the Sixth Circuit "consider[s] such factors as whether spillover evidence would incite or arouse the jury to convict on the remaining counts, whether the evidence was intertwined, the similarities and differences between the evidence, the strength of the government's case, and the ability of the jury to separate the evidence." *United States v. Soto*, 794 F.3d 635, 656 (6th Cir. 2015) (citations omitted).

### II.A.   Trial of Count 1, Count 2, and Count 49

Mr. Bongiorno argues that trying the two conspiracy counts together will prejudice him. Although they involve different time periods, he argues that the conspiracies and the related numerous securities and wire fraud counts are sufficiently similar in substance that a jury would have a difficult time separating the evidence even with appropriate instructions. (ECF No. 288, PageID #2342–45.) Ms. Smirnova argues that evidence regarding Count 48, Count 49, and Count 50, though she is not charged in these counts, involves her and would prejudice her ability to defend against Count 1 and Count 2. (ECF No. 278, PageID #2185–92.)

Mr. Spivak seeks to avoid "significant spillover prejudice between Count 1 and Count 2" and the related fraud charges by severing these counts.  (ECF No. 319, PageID #3135.)

Based on its familiarity with the facts charged from its pretrial management of the case, the Court finds that it will be difficult for a jury to separate Count 1 from Count 2.  Notwithstanding the different time periods at issue in each charge and the related securities and wire fraud charges, the allegations involve similar conspiracies, as well as conduct and transactions, beyond the ken of a lay jury.  Additionanlly, the conspiracy charges add a layer of complexity.  Mr. Bongiorno is charged with only one of the two conspiracies.  The obstruction counts threaten to color the actions of all co-Defendants, particularly Ms. Smirnova.  At bottom, a fair trial requires that "a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence" of the accused.  *Bruton*, 391 U.S. at 131 n.6 (citing *Blumenthal v. United States*, 332 U.S. 539, 559–60 (1947)).  Accordingly, the Court finds that Defendants have carried their burden of pointing to specific substantial prejudice from trying all counts in the indictment together.

To prevent unfair prejudice, the Court exercises its discretion and **GRANTS** Defendants' motion to bifurcate, or rather trifurcate, the trial before the same jury.  Specifically, the trial will proceed in three stages—*first*, Count 1 and its related fraud charges; *second*, Count 2 and its related fraud charges; and *third*, Count 49 (since Count 48 and Count 50 are not proceeding).  After the jury returns a verdict at each stage, trial on the next charge or group of charges will proceed immediately.

In fashioning this relief, the Court gave serious consideration to the burden of this approach on the United States.  At oral argument, the prosecutor indicated that he had not yet decided how to present its case, but stated that the United States would "typically" proceed at trial "based on the way [it has] charged this case, [it] would be presenting evidence on Count 1 first and then [it] would switch to Count 2." (ECF No. 319, 3140–41.)  Chronologically, then, Count 49 naturally follows both.  For these reasons, this approach is more manageable for the jury, tracks the likely presentation of evidence with little, if any, prejudice to the United States, and assures a fair trial for these moving Defendants.

### II.B.   Motion to Sever Mr. Scott

That leaves the motion of Mr. Scott to sever his trial from Mr. Spivak's.  (ECF No. 275, PageID #2159.)  As an initial matter, Mr. Scott's argument does not implicate *Bruton* or *Samia v. United States*, 599 U.S. 635 (2023).  Those cases involve the confession of a non-testifying co-defendant that incriminates a co-defendant who does not have the opportunity to confront the declarant.  *See Richardson v. Marsh*, 481 U.S. 200, 207–08 (1987) (limiting *Bruton* to confessions that incriminate a co-defendant); *see also Samia*, 599 U.S. at 647–48 (summarizing Supreme Court precedent as limited to directly incriminating confessions by a non-testifying co-defendant); *cf. United States v. Inadi*, 475 U.S. 387, 400 (1986) (holding that the unavailability rule does not bar the admission of a co-conspirator's statements made during the course of and in furtherance of the conspiracy).  Here, Mr. Scott's complaint concerns Rule 801(d)(2)(E) of the Federal Rules of Evidence, which makes co-conspirator statements not hearsay.  Because of this Rule, Mr. Scott will face the

same difficulties whether tried with Mr. Spivak or separately—it is unlikely that Mr. Spivak would testify at Mr. Scott's trial if Mr. Scott were tried second.  And Mr. Scott points to no other prejudice that would justify relief from proceeding to trial with his co-defendants.  Therefore, the Court **DENIES** his motion.

## III.  Motions to Suppress and for Return of Property

Finally, Mr. Bongiorno filed two motions directed at certain evidence:  (1) a motion to suppress (ECF No. 287), and (2) a motion to return property (ECF No. 315). Both motions stem from a seizure of property on July 7, 2023 when Mr. Bongiorno was arrested at the airport in St. Thomas in the U.S. Virgin Islands.  (ECF No. 287, PageID # 2336.)  Apparently, the United States seized numerous items, including Mr. Bongiorno's laptop, mobile phones, hard drive, dictaphone, and documents.  (*Id.*, PageID #2336–37.)  The two motions seek the suppression of evidence obtained from any search of these items and return of the items seized.  (*See* ECF No. 287; ECF No. 315.)

### III.A. Suppression

Mr. Bongiorno seeks to suppress evidence from the seizure of his property when he was arrested.  However, he lacks standing to bring this motion, at least at this time.  "Standing to invoke the [exclusionary] rule has . . . been limited to cases in which the prosecution seeks to use the fruits of an illegal search or seizure against the victim of police misconduct."  *United States v. Leon*, 468 U.S. 897, 910 (1984) (citations omitted).

At oral argument, the prosecutor represented that he does not plan to seek admission of any evidence obtained from the search of the items at issue:  "There's no

evidence to suppress. . . . There's no evidence being introduced." (ECF No. 319, PageID #3157.) Accordingly, any relief—and the Court has no opinion on whether any relief is warranted or appropriate—would not affect the trial of this matter. Therefore, the matter is either moot or, at least, not ripe. If the United States changes tack, then Mr. Bongiorno may challenge the search and the admissibility of any evidence unlawfully seized. Based on the record as it stands, because Mr. Bongiorno lacks standing to challenge the admissibility of evidence that the United States does not plan to use at trial, the Court **DENIES** Mr. Bongiorno's motion to suppress.

### III.B. Return of Property

"A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized." Fed. R. Crim. P. 41(g). Under Rule 41, the court must take evidence on any factual issues necessary to resolve the motion. *Id.* The Sixth Circuit recognizes that a motion for the return of property seeks equitable relief like a civil complaint. *White Fabricating Co. v. United States*, 903 F.2d 404, 407–08 (6th Cir. 1990).

Where no criminal proceedings are pending, other federal courts conclude that they lack jurisdiction over a motion under Rule 41(g) and that the issue should be raised through a separately filed civil complaint. *See, e.g., In re Search of the Scranton Hous. Auth.*, 487 F. Supp. 2d 530, 535 (M.D. Pa. 2007); *In re the Search of S&S Custom Cycle Shop*, 372 F. Supp. 2d 1048, 1051 (S.D. Ohio 2003). At oral argument, the United States represented that the property at issue remains subject to an ongoing investigation. (ECF No. 319, PageID #3158.) In this sense, there are

45

no pending criminal proceedings involving the property that is the subject of Mr. Bongiorno's motion, in which case, the motion does not present the proper procedural vehicle to seek its return.  Further, the United States has a continuing interest in the property, making the motion premature.  *See United States v. Hagar*, No. 23-3377, 2023 U.S. App. LEXIS 34378, at *4 (6th Cir. Dec. 27, 2023) (citing *United States v. Saunders*, 957 F.2d 1488, 1495 (8th Cir. 1992)).

Additionally, to the extent Rule 41(g) provides a proper basis for the motion, such a motion "*must* be filed in the district where the property was seized."  Fed. R. Crim. P. 41(g) (emphasis added); *see also United States v. Miscellaneous Firearms & Accessories*, No. 1:19-mc-1, 2019 U.S. Dist. LEXIS 31306, at *4, 2019 WL 950257, at *2 (N.D. Ohio Feb. 27, 2019).  Because the property at issue was seized "in the airport at St. Thomas, United States Virgin Islands" (ECF No. 315, PageID #3002), Rule 41(g) does not afford the Court a basis for granting relief.

For these reasons, the Court also **DENIES** Mr. Bongiorno's motion for return of property.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions to dismiss the indictment (ECF No. 283 & ECF No. 291; ECF No. 284; ECF No. 285; and ECF No. 289).  Specifically, the Court **GRANTS** the motion to dismiss Count 48 and Count 50 (ECF No. 285) and **DENIES** all other motions to dismiss.  Further, the Court **GRANTS** Ms. Smirnova's motion to bifurcate (ECF No. 278); **GRANTS** Mr. Bongiorno's motion for relief from prejudicial joinder

(ECF No. 288); **DENIES** Mr. Scott's motion to sever (ECF No. 275); and **DENIES** Mr. Bongiorno's motions to suppress (ECF No. 287) and for return of property (ECF No. 315).  Finally, the Court **GRANTS** all motions to join or adopt other motions (ECF No. 286; ECF No. 311; and ECF No. 316).

      **SO ORDERED.**

Dated:  May 31, 2024

_____
      J. Philip Calabrese
      United States District Judge
      Northern District of Ohio